IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 35472

VILLA HIGHLANDS, LLC, an Idaho limited )
liability company, )
                                    )
    Plaintiff-Appellant, )
                                    )
v. )
                                    )
WESTERN COMMUNITY INSURANCE )
CO., an Idaho corporation, FARM BUREAU )
INSURANCE COMPANY OF IDAHO, an )
Idaho corporation; and DOES I-V, )
                                    )
    Defendants-Respondents. )
-------------------------------------------------------- )
WESTERN COMMUNITY INSURANCE )
CO., an Idaho corporation, )
                                    )
    Counterclaimant-Respondent, )
v. )
                                    )
VILLA HIGHLANDS, LLC, an Idaho limited )
liability company, )
                                    )
    Counterdefendant-Appellant. )

Boise, December 2009

2010 Opinion No. 17

Filed: February 9, 2010

Steven W. Kenyon, Clerk

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Darla S. Williamson, District Judge.

District court decision on insurance claim, <u>affirmed.</u>

Perkins Coie, LLP, Boise, for appellant. Richard C. Boardman argued.

Anderson, Julian & Hull, LLP, Boise, for respondent. Robert A. Anderson argued.

_____

BURDICK, Justice

      This case involves a dispute over an insurance claim filed by Appellant Villa Highlands, LLC (Villa Highlands) under its builder's risk insurance policy issued by Western Community Insurance Co. (Western Community) and Farm Bureau Insurance Company of Idaho (Farm

1

Bureau).[1] In May 2006, during construction, the Villa Highlands building was destroyed by fire. Thereafter, a dispute and litigation ensued over the application and interpretation of the underinsurance provision in the policy. A jury trial was held May 5, 2008, following extensive pre-trial motions and orders. On appeal, Villa Highlands argues that the district court erred in the following: (1) holding that Count Four of Villa Highlands's Second Amended Complaint did not state a claim for breach of the insurance contract; (2) dismissing Villa Highlands's claim for declaratory relief; (3) denying Villa Highlands's Motion for Relief from Judgment; (4) allowing counsel for Villa Highlands to withdraw and then refusing to vacate the trial or extend certain deadlines; (5) refusing to allow Villa Highlands to present evidence in connection with its consequential damages claim; and (6) denying, in part, Villa Highlands's Motion to Compel. We affirm the district court on all issues.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Villa Highlands was constructing an independent living community when the building was destroyed by fire in May 2006. This dispute arose regarding the insurance claim filed by Villa Highlands with Western Community and Farm Bureau for the loss of the building. On October 11, 2006, Western Community requested that the parties proceed with an appraisal process to resolve questions about the loss claimed by Villa Highlands, in accordance with Paragraph E.2 of the builder's risk policy.[2] On November 13, 2006, Villa Highlands filed its Complaint against Western Community and Farm Bureau, as a result of the companies' alleged refusal to pay Villa Highlands's casualty claim arising under the policy. An amended complaint was filed December 6, 2006, and included Dale Zimney, an insurance agent for Western Community, as a defendant. The amended complaint alleged that Western Community had directly breached the insurance contract and that Zimney had breached an agreement to provide adequate insurance coverage, a breach for which Western Community was vicariously liable. It

---

[1] Farm Bureau was eventually dismissed as a defendant in this matter by the district court.

[2] Paragraph E.2 states:
> E. Loss Conditions
> 2. Appraisal
> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

Builders Risk Coverage Form.

appears that little occurred in the case during 2007; however, on December 14, 2007, Western Community filed a Motion to Compel Appraisal, contending that Villa Highlands had delayed or failed to cooperate in the appraisal process.

In January of 2008, the parties entered into a written stipulation wherein they agreed that the fully appraised fair market value of the building on the date of completion would be $7,580,000; that the amount of the "loss (repair/replacement cost)" under the policy was $3,967,157; and that the stipulation satisfied the appraisal conditions set forth in the policy. Also in January, Villa Highlands filed its Second Amended Complaint substantially modifying the breach of contract claim to focus primarily on Zimney's actions. Western Community filed its Answer on January 29, 2008. On February 29, 2008, Villa Highlands filed a Motion for Summary Judgment seeking partial summary judgment on the issue of the interpretation of the builder's risk policy at issue. On March 3, 2008, Western Community filed its Motion for Summary Judgment, seeking the dismissal of all claims pending against it in Villa Highlands's Second Amended Complaint.

On March 6, 2008, counsel for Villa Highlands moved to withdraw as counsel of record for Villa Highlands, and the request was granted on March 12, 2008. Prior to withdrawing, counsel filed a Motion to Vacate Trial. At that time, the district court denied the motion to vacate and refused to grant a continuance, keeping the trial date of May 5, 2008. However, the court extended the hearing date on the motions for summary judgment from March 26, 2008, to April 9, 2008, and extended the deadline for depositions of expert witnesses to April 18, 2008. On March 24, new counsel for Villa Highlands moved for an extension of time to file its opposition and reply briefing in connection with the summary judgment motions. The court denied this request. Villa Highlands also filed two subsequent motions to vacate the trial date and extend certain deadlines, both of which were denied.

On April 9, 2008, the district court ruled from the bench on the pending motions for summary judgment, finding that: (1) Farm Bureau was dismissed from the case; (2) the builder's risk policy was unambiguous; (3) the value of the building would be determined by the appraisal process provided for under the policy rather than using the $7,580,000 figure contained in the January stipulation; and (4) the "value" of the building for use in the appraisals at issue was "actual cash value." On April 17, 2008, prior to trial, the district court ruled that Count Four of Villa Highlands's Second Amended Complaint did not allege a claim for breach of the written

3

insurance contract, and Villa Highlands had not timely supplemented its discovery regarding consequential damages and thus would not be allowed to submit the same to the jury.

During that hearing, as well as the hearing on April 16, the district court noted that the claim for declaratory action in Count Six of the Second Amended Complaint was decided to the extent of the court's determination that "the value on the date of completion is the actual cash value." Then, during the hearing on April 28, 2008, in interpreting the insurance contract, the court stated its understanding that the declaratory action would be decided once the parties obtained two matching appraisals or had an umpire determine the "value" for the purpose of calculating the amount the insurance company owed, to which neither party objected. On April 29, 2008, the court entered a written order as to its April 9th rulings on the summary judgment motions. The court amended the proposed language dismissing Villa Highlands's claim for declaratory relief, and handwrote "[t]o be determined after appraisals."

On May 1, 2008, Villa Highlands and Western Community submitted their appraisals to an umpire, and, on May 4, 2008, the umpire sent a letter to the parties with his finding that the appraisal submitted by Western Community was more reliable. On May 5, counsel for Villa Highlands stated that Villa Highlands was "not attacking the appraisal process…for purposes of this trial," but did not waive the right to challenge the appraisal process on appeal. The parties stipulated to the amount of damages sought at trial, and that Stipulation was entered on May 6, 2008.

The case was tried before a jury from May 5, 2008, through May 13, 2008. The jury awarded no damages to Villa Highlands. On May 27, 2008, the court ordered that all claims against Western Community, including the claim for declaratory relief, were dismissed. On August 26, 2008, the district court denied Villa Highlands's Motion to Grant Relief from Judgment. Villa Highlands timely appealed.

## II. ANALYSIS

**A. The district court did not err in holding that Count Four of Villa Highlands's Second Amended Complaint did not state a claim for breach of the insurance contract.**

Villa Highlands argues that Count Four of its Second Amended Complaint contains a short and plain statement of a breach of contract claim upon which relief may be granted in accordance with Idaho Rule of Civil Procedure 8(a)(1). Villa Highlands further asserts that Western Community's Answer demonstrates that it was on notice of the claim. Western Community counters that Count Four did not state a breach of contract claim against Western

4

Community but, instead, clearly set forth a vicarious liability claim in contract based upon allegedly faulty advice provided by Mr. Zimney.

Idaho Rule of Civil Procedure 8(a)(1) provides that a pleading setting forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "A complaint need only contain a concise statement of the facts constituting the cause of action and a demand for relief." *Clark v. Olsen*, 110 Idaho 323, 325, 715 P.2d 993, 995 (1986). This Court has stated that such pleadings should be construed liberally so as to "secure a 'just, speedy and inexpensive' resolution of the case." *Gillespie v. Mountain Park Estates, L.L.C.*, 138 Idaho 27, 30, 56 P.3d 1277, 1280 (2002) (quoting *Christensen v. Rice*, 114 Idaho 929, 931, 763 P.2d 302, 304 (Ct. App. 1988)). The focus is on insuring "that a just result is accomplished, rather than requiring strict adherence to rigid forms of pleading." *Seiniger Law Office, P.A. v. N. Pac. Ins. Co.*, 145 Idaho 241, 246, 178 P.3d 606, 611 (2008). To reach a just result, "[o]ur Rules of Civil Procedure establish a system of notice pleading." *Youngblood v. Higbee*, 145 Idaho 665, 668, 182 P.3d 1199, 1202 (2008). Thus, the "key issue in determining the validity of a complaint is whether the adverse party is put on notice of the claims brought against it." *Vendelin v. Costco Wholesale Corp.*, 140 Idaho 416, 427, 95 P.3d 34, 45 (2004).

In *Seiniger Law Office*, this Court found that "[d]espite the glaring deficiencies in the complaint" the defendant understood that the complaint raised a contract claim. 145 Idaho at 247, 178 P.3d at 612. The defendant's answer raised an affirmative defense of discharge of its contractual obligations toward plaintiff, and the defendant also moved for summary judgment as to the breach of contract claim. *Id*. This Court found that the defendant's response was sufficient to demonstrate that it had been put on notice of the plaintiff's breach of contract claim. *Id*.

In *Zattiero v. Homedale School District No. 370*, this Court similarly found that the defendant was put on notice of a breach of contract claim. 137 Idaho 568, 51 P.3d 382 (2002). There, the complaint alleged a claim for wages due "as a result of [the plaintiff's] employment as a school nurse with the School District," based on the School District's failure to pay her under the Certified Schedule. *Id*. at 571, 51 P.3d at 385. This Court found that the claim suggested "implicitly" that the plaintiff's claim for wages was based on a breach of contract. *Id*. at 572, 51 P.3d at 386. The Court then also determined that the School District demonstrated that it was on

5

notice of the claim through its Answer, in which it stated, "[t]o the extent that Plaintiff alleges a breach of Contract, Defendant did not breach such contract . . . ." *Id.* (alteration in original).

Similarly, in *Vendelin v. Costco Wholesale Corp.*, this Court found that a plaintiff had sufficiently pled punitive damages when the "allegations contained in the amended complaint suggest[ed] that the prayer for punitive damages was based on injuries she sustained from falling merchandise while shopping at the Boise Costco." 140 Idaho 416, 428, 95 P.3d 34, 46 (2004). We also found that Costco had acknowledged the claim for punitive damages by raising three separate defenses to a claim for punitive damages in its Answer. *Id.* That was sufficient to show that Costco was on notice of the plaintiff's claim for punitive damages. *Id.* In contrast, in *Youngblood v. Higbee*, this Court found that the complaint's combination of an inaccurate description of the defendant franchisor, coupled with the lack of any allegation that the franchisor was responsible for the acts of its franchisee, failed to meet notice pleading standards and resulted in the failure to state a claim against Big O Tires, Inc., following the alleged negligent repair of brakes by a franchisee repair shop. 145 Idaho 665, 669, 182 P.3d 1199, 1203 (2008).

Here, Count Four of Villa Highlands's Second Amended Complaint read as follows:

<u>COUNT FOUR</u>

<u>Zimney Had Apparent Authority to Bind Western Community and Farm Bureau under the Policy (Breach of Contract)</u>

XXIII.

Zimney entered into a contract with Western Community and Farm Bureau which gave Zimney authorization and permission to sell its insurance policies and products to consumers. Zimney sold commercial, personal and other forms of insurance on behalf of Farm Bureau and Western Community. Zimney received a commission from Farm Bureau and Western Community from each insurance policy and/or product he procured for a consumer.

XXIV.

In April 2005, Zimney represented to Villa Highlands that he sold insurance policies and/or products issued by Farm Bureau and Western Community. To obtain insurance coverage, Villa Highlands filled out an application prepared by Western Community and/or Farm Bureau provided by Zimney. Villa Highlands received a policy declaration sheet which broke down the premium for each coverage, in addition to the policy itself issued by Western Community and/or Farm Bureau. The policy limits reflected on the declaration sheet reflected the amount of Villa Highland's [sic] construction budget as

6

requested by Zimney. Villa Highlands paid the all [sic] premiums due on the policy.

### XXV.

The conduct and actions of Western Community and/or Farm Bureau gives rise to Zimney having apparent authority to bind Western Community and/or Farm Bureau for the representations and statements made by Zimney to obtain the subject policy on behalf of Villa Highlands.

### XXVI.

Villa Highlands had reason to believe and did believe that Zimney had authority from Western Community and/or Farm Bureau to sell the subject policy as represented by Zimney.

### XXVII.

Based upon Zimney's apparent authority, Western Community and/or Farm Bureau are bound by his representations concerning the subject policy and failing to tender the amount due arises to a breach of contract.

### XXVIII.

As a direct result of Western Community's and/or Farm Bureau's breach of contract, Villa Highlands has suffered substantial damages in excess of $10,000.00, which amount will be proven at trial.

Western Community responded to Count Four in its Answer as follows, in pertinent part:

### SECOND DEFENSE

### VI.

These answering Defendants admit only the allegations contained in Paragraph 23 of Plaintiff's Second Amended Complaint concerning the fact that Dale Zimney entered into a contract with these answering Defendants which gave Zimney the authorization and/or permission to sell certain insurance policies and products to consumers, for which Zimney received a commission from Western Community and/or Farm Bureau for each insurance policy/product sold. Defendants deny the remainder of the allegations contained in Paragraph 23.

### FOURTH DEFENSE

Defendant Western Community fully performed each term of the agreement between it and Plaintiff in good faith and Plaintiff has received the full benefits of the agreement and Western Community attempted to carry out its obligations under the agreement in full and in accordance with the terms and conditions of the agreement.

### TWELFTH DEFENSE

That a condition precedent of Defendant Western Community's obligation has not occurred and/or that Plaintiff may have violated or failed to comply with certain conditions of the insuring agreement thereby discharging these answering

Defendants from obligations under the insuring agreement with respect to the claims set forth in Plaintiff's Second Amended Complaint.

FOURTEENTH DEFENSE

Plaintiff's actions have prevented the Defendant Western Community from performing its contractual obligations, if any.

In its memorandum supporting its Motion for Summary Judgment, Western Community focused on Villa Highlands's allegations regarding Zimney and then stated: "Plaintiff asserts that Farm Bureau and Western Community are vicariously liable for Zimney's alleged actions and/or that Western Community was bound to provide 'full coverage' as a result of Zimney's apparent authority to bind Western Community under the Policy." Western Community then went on to argue that Villa Highlands could not maintain an actionable breach of contract claim against it under agency theory. In its brief in opposition to Western Community's Motion for Summary Judgment, Villa Highlands then focused on Western Community's liability for the acts of Zimney as its agent.

In contrast to *Seiniger Law Office*, *Zattiero*, and *Vendelin*, it is not readily apparent from either Western Community's answer or its subsequent briefing and comments at hearings that it was on notice of a direct breach of contract claim against it. While Western Community did raise as a defense that it had fully performed each term of the agreement between it and Villa Highlands in good faith, Western Community's subsequent briefing focusing on apparent authority indicates that it was not defending against a breach of contract claim.

Following extensive discussion on the issue at hearings on April 9, 16, 17, and 28, at which counsel for Villa Highlands presented multiple inconsistent positions on the issue, the district court determined that Count Four did not state a breach of contract claim directly against Western Community. The district court also determined that Western Community could not be held liable for Zimney's alleged breach of an oral agreement under Count Four "to the effect that [Villa Highlands] would be properly or fully insured."

During the hearings on the issue, counsel for Villa Highlands first asserted that Count Four was a breach of contract claim directly against Western Community on the written contract, independent of the claim against Zimney. Villa Highlands then seemed to offer Count Four as an apparent authority argument against Western Community: "When the contract that Mr. Zimney has with Western and Farm Bureau authorizes him to solicit as an agent on behalf of that, that is not a stretch by any means to suggest that he therefore has apparent authority." The

8

district court then asked if that would bring Western Community liability in on the breach of contract and Villa Highlands responded, "[y]es." A week later, at the hearing on April 16, Villa Highlands argued that it was a direct breach of contract claim against Western Community "[b]ecause they failed to pay under their own policy provisions." Counsel further argued: "[W]e've always read it as a breach of contract and, of course, it is. They have not paid under the contract. It's that simple. People are getting lost in the apparent authority, as far as I'm concerned." Finally, at the April 28 hearing, the court determined that Western Community should be granted summary judgment on Count Four because:

> It's clear from the record that [counsel for Villa Highlands] got up and he said what he said, and that the plaintiff's cause of action was not against Western Community on an apparent authority arising out of an oral contract….If you go back through this file and look at all the complaints that have been filed, you know, clearly at one point, I believe that Villa Highlands was alleging a breach of the written contract against Western, and then it evolved into what we have now, the most recent second amended complaint, and that the cause of action, the written contract, appeared to have been abandoned and went on apparent authority for Zimney's actions in this alleged—for negligence and alleged—breach of an alleged oral contract based on what Zimney said, not based on the written contract.

Based upon the district court's findings, as well as our own review of the Second Amended Complaint, Western Community's answer, the briefing on the motions for summary judgment, and the arguments presented by counsel, we find that Villa Highlands did not sufficiently plead a direct breach of contract claim against Western Community in its Second Amended Complaint. Therefore, we affirm the district court on this issue.

**B. The district court did not err in denying Villa Highlands's Motion for Relief from Judgment.**

Villa Highlands next contends that the district court erred in dismissing Count Six of its Second Amended Complaint because there was no motion, proceeding, or stipulation before the court to allow for dismissal of the claim and the claim had not been fully adjudicated. In a separate issue, Villa Highlands then contends that the district court erred in denying Villa Highlands's Motion for Relief from Judgment because unique and compelling circumstances existed and justiciable controversies remained in regard to Villa Highlands's claim for declaratory relief. Because we find that the two issues flow from the same issue regarding the dismissal of Count Six, we will review the issues in the context of whether the district court erred in denying Villa Highlands's Motion for Relief from Judgment.

9

"An aggrieved party may obtain relief from a final judgment by making a motion to the trial court under I.R.C.P. 60(b)." *Miller v. Haller*, 129 Idaho 345, 348, 924 P.2d 607, 610 (1996). "[A]lthough the court is vested with broad discretion in determining whether to grant or deny a Rule 60(b) motion, its discretion is limited and may be granted only on a showing of 'unique and compelling circumstances' justifying relief." *Id.* at 349, 924 P.2d at 611 (quoting *Matter of Estate of Bagley*, 117 Idaho 1091, 1093, 793 P.2d 1263, 1265 (Ct. App. 1990)). When examining whether a trial court abused its discretion, this Court considers whether the court: (1) perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion and consistently within the applicable legal standards; and (3) reached its decision by an exercise of reason. *Shore v. Peterson*, 146 Idaho 903, 915, 204 P.3d 1114, 1126 (2009).

The issue before the district court in Villa Highlands's Motion for Relief from Judgment was whether "the court should grant it relief from the order dismissing count six of the Amended Complaint because 'the declaratory action was not concluded or fully determined.'" Villa Highlands further requested that the court set aside the umpire's findings because they were not in compliance with the terms of the insurance policy and the appraisal was based on significant mistakes and errors. We find that the district court did not abuse its discretion in denying Villa Highlands's Motion for Relief from Judgment.

Count Six of Villa Highlands's Second Amended Complaint reads, in pertinent part:

XXXIV.

By virtue of the facts as previously described, Villa Highlands is entitled to this Court declaring the relative rights and obligations of the parties hereto under the previously described Policy and thereupon the Court should determine that Villa Highlands is entitled to the payment of the full amount due and owing pursuant to the Policy without reduction, offset, or reduction in any manner.

XXXV.

Villa Highlands seeks a specific ruling and declaration of this Court that any purported underinsurance for the Villa Highlands Building was caused by Zimney's apparent authority with Western Community and/or Farm Bureau and not by Villa Highlands.

During the hearings, the district court determined that the contract was unambiguous and that "value" meant "actual cash value."[3] Pursuant to agreement of the parties, the court relieved Villa

---

[3] The district court, when discussing the January 17, 2008, Stipulation between the parties stated: "Because I've gone over this contract and gone over this contract, and I'm prepared to say that it's unambiguous as to that. The value means actually [sic] cash value, and I thought that's what both parties-that both parties believed that." The

Highlands of the building value of $7,580,000 that the parties had agreed to in their written stipulation made in January. Counsel for both Villa Highlands and Western Community then engaged in a discussion with the court as to the process for determining what the actual cash value was:

> Court: Submit the difference to the umpire. So it's assuming there is at least three, and the umpire would be the third person."
>
> Counsel for Western Community: Right, he's the tie breaker.
>
> Counsel for Villa Highlands: He doesn't do it separate.
>
> Court: So it does appear that that would be a binding decision that a jury would not decide then.
>
> Counsel for Western Community: You're right. This is not a jury issue, if you find that the policy is unambiguous.
>
> Counsel for Villa Highlands: Why should it be a jury issue at this point? Why don't we stipulate to try to get this all done before jury, because it still could get contested, some arbitration that is not appealable.

During this discussion, counsel for Villa Highlands pointed out that there were some problems with the appraisals that had already been completed, but did not raise it as an issue for the court: "The problem with these appraisals that have already been done, Judge, is they include, as I call them, uninsurable items, but I think that is for us to work out with whomever." The court then clarified how the actual cash value would be determined: "…the contract is unambiguous in its actual cash value, so [Villa Highlands] needs to get an appraiser really quick and give that to [Western Community] and see if you guys can agree on an amount. And if not, it goes to a third appraiser that the two of you should agree on and all done before the trial."

On April 16, the court mentioned its understanding of the posture of the claim for declaratory relief at that point: "I think the dec action is going, as the Court's determination that the value on the date of completion is the actual cash value. To that extent, it's gone." On April 29, the district court entered its order on Western Community's Motion for Summary Judgment, in which it ordered that Count Six was determined as follows: "With regard to Count Six of the Second Amended Complaint, Plaintiff's claim for declaratory relief, the Court declares that the

---

court later reiterated that idea: "And so it would appear that in reading the contract as a whole that that would be the reasonable definition of value to mean actual cash value. And then, of course F says—F2, that we will not pay a greater share of that then proportions [sic] the value upon date of completion of the building. And the only definition of valuation is actual cash value…"

insurance policy at issue is clear and unambiguous by its terms." The court then crossed out the proposed language: "and hereby dismisses Plaintiff's claim for relief on the charge, under Paragraph 34 of the Second Amended Complaint, that Villa Highlands is entitled to the payment of the full amount due and owing pursuant to the policy without any reduction or offset" and added the handwritten: "To be determined after appraisals." The order then stated: "The Court will, in a separate Order, compel Villa Highlands to engage in the § E.2 appraisal process, through which a determination will be made as to what, if any, additional money Western Community must pay to Villa Highlands under the insurance policy for the claimed loss." The Order on Defendant Western Community's Motion to Compel did just that:

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Plaintiff must immediately and fully cooperate and engage in the appraisal process set forth under § E.2 of its Builder's Risk Policy, through which a final determination will be made as to what additional amount, if any, Western Community must pay Villa Highlands for the loss at issue under the terms of the insurance policy.

On May 1, 2008, Villa Highlands and Western Community submitted their appraisals to an umpire, and, on May 4, 2008, the umpire sent a letter to the parties with his finding that the appraisal submitted by Western Community was more reliable. On May 5, counsel for Villa Highland stated that Villa Highlands was "not attacking the appraisal process…for purposes of this trial," but did not waive the right to challenge the appraisal on appeal.[4] The parties stipulated that, based upon the appraisal determination, the amount of loss was $3,967,157. That stipulation was entered on May 6, 2008.

Following entry of the final judgment, Villa Highlands brought its Motion for Relief from Judgment. The court pointed out that one of the problems with Villa Highlands's motion was that it was "essentially asking the court to use a relief from judgment motion to vacate an umpire's decision." The court asserted that this was improper:

> Villa Highlands did not bring a declaratory action or any motion asking the court to vacate the decision of the umpire until the trial was over and the court had dismissed the declaratory action . . . . At the time the declaratory action was dismissed, the court was unaware of any dispute between the parties that remained and needed to be decided by the court in regard to the way that the

---

[4] Counsel for Villa Highlands repeatedly stated that Villa Highlands would not be contesting the appraisal process at that point: "I just want to say that with respect to the appraisal process, we aren't waiving our right to challenge that on appeal. We reserve our right to challenge on appeal, but for purposes solely for this trial, we are not challenging that." "We're not attacking the appraisal process at this point. Again, it—or the number, or the number. We are not—at this point, for purposes of this trial we are saying: Okay, they won, they've got—it's their number." "We have accepted the appraisal process."

12

> appraisal process was conducted.  Furthermore, the court understood the decision of the umpire to be binding, and the parties did not bring any motion challenging the binding nature of the umpire's decision.

The district court therefore found that the fact that Villa Highlands had failed to take action before the judgment was entered was not a unique and compelling circumstance justifying relief from the judgment.[5]

We find that the district court did not abuse its discretion in denying Villa Highlands's Motion for Relief from Judgment.  The district court's statements at the hearings indicate that it meant for the determination in its Order on Western Community's Motion for Summary Judgment to resolve the "relative rights and obligations of the parties" and determine what payment Villa Highlands was entitled to, based upon the appraisal process.  The court ordered Villa Highlands to engage in the "E.2 appraisal process," provided for under the builder's risk policy.  Paragraph E.2 states:

> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss.  In this event, each party will select a competent and impartial appraiser.  The two appraisers will select an umpire.  If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction.  The appraisers will state separately the value of the property and amount of loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will be binding.

Therefore, the decision of the umpire was binding upon Villa Highlands.  Villa Highlands did not contest either the language and process of Paragraph E.2 or the determination of the umpire, but instead stipulated, for purposes of trial, that the amount of loss was $3,967,157.  It should also be noted that it was Villa Highlands that did not submit its appraisal for the process in accordance with the builder's risk policy until just days before trial.  Western Community filed its first Motion to Compel Appraisal on December 14, 2007.  Had Villa Highlands submitted an

---

[5]  In its brief on appeal, Western Community claims that Villa Highlands waited until its Motion for Relief from Judgment to request that the district court vacate the umpire's decision.  According to Western Community, Villa Highlands wanted to utilize the substantially higher valuation of the building arrived at through the appraisal process in litigating its trial claim that Western Community was vicariously liable for Zimney's alleged negligence in causing the building to be underinsured.  When it failed at trial on that claim, Western Community contends that Villa Highlands changed course and sought to discredit the high-value appraisal in order to benefit from a lower valuation of the building pursuant to the underinsurance provision of the insurance policy.  That is, the lower the value of the building, the less it would have been underinsured and the more Villa Highlands would be able to recover under the terms of the underinsurance provision.  It is not clear whether these considerations played a part in the district court's decision, but there was certainly basis in the record to allow these considerations to be factored into the decision.

13

appraisal at an earlier date it may have had more time to contest the umpire's determination and the appraisal process. Thus, we affirm the district court's decision.

**C. The district court did not err when it allowed counsel for Villa Highlands to withdraw and then refused to vacate the trial or extend certain deadlines.**

Villa Highlands argues that the court abused its discretion when it refused to vacate the trial or extend the summary judgment deadlines because these decisions affected the determination on all other pre-trial motions, which contributed to depriving Villa Highlands of a fundamentally fair trial. Villa Highlands asserts that this occurred because the district court did not toll any deadlines and allowed proceedings to continue during the 20-day time period following the entry of the order allowing counsel to withdraw. Western Community counters that the court's ruling inured to Villa Highlands's benefit, insuring that new counsel had an opportunity to file a response to the pending summary judgment motion and take expert depositions prior to trial. In addition, Western Community asserts that the circumstances that allegedly required the remedy of vacating the trial were of Villa Highlands's own making.

"A decision to grant or deny a motion for continuance is vested in the sound discretion of the trial court." *Gunter v. Murphy's Lounge, LLC*, 141 Idaho 16, 24, 105 P.3d 676, 684 (2005). Idaho Rule of Civil Procedure 11(b)(3) states that after a court has granted an attorney leave to withdraw, "no further proceedings can be had in that action which will affect the rights of the party of the withdrawing attorney for a period of 20 days after service or mailing of the order of withdrawal to the party."

Counsel was granted leave to withdraw on March 12, 2008. The order granting counsel leave to withdraw stated: "Villa Highlands, LLC shall, within twenty (20) days, appear personally in this matter or shall have an attorney appear on its behalf." During that hearing, the following dialogue regarding the 20 day time period occurred between withdrawing counsel and the court:

> Counsel: Your Honor, the problem would be, in light of the scheduled hearing date on March, I believe 26, to allow him 20 days to respond, he will not have any responses to the summary judgments filed against him nor will he have an opportunity to reply to the responses.

> Court: Well, okay, if you get your 20 day notice out tomorrow or, whatever, because apparently in his letter he said that he was gone or he might have been here today.
>
> So assuming he's going to have 20 days—is that from the date of service? Assume three days for mailing, so we're looking at 23 days. So we're to April 7.

14

So we could set this on April 9, continue it to April 9. Then at least I would have time to go through what I do have. . . .

So that will give me time to read through everything and then if he files a new memorandum or, whatever, then I can have the opportunity to look at that. So do you want to continue the hearing on the motions for summary judgment to April—what did I say—9?

Discussion then followed on extending the deadlines for depositions and leaving discovery open. On March 14, the court entered its supplemental order extending deadlines: "[P]ending hearing date on all of the motions for summary judgment set for March 26, 2008 will be extended to April 9, 2008 at 3:00 p.m….depositions of all expert witnesses in the case shall be completed no later than April 18, 2008."

On March 24, 2008, counsel for Villa Highlands filed a Motion for Extension of Time to File Opposition and Reply Briefing and that motion was denied on March 25. However, the motion argued that counsel only had until March 26 to file responses to Western Community's and Zimney's motions for summary judgment. The court had clearly extended the deadline for the hearing on those motions until April 9, and there is no evidence in the record that the responses were still due on March 26. In its brief on appeal, Villa Highlands also argues that the district court failed to toll the discovery cutoff on March 31; however, during the hearing it was stated that discovery would remain open through the deadline of April 18 for taking expert witness depositions. Villa Highlands also argued that it had been prejudiced because the deadline of March 6, 2008, for deposing lay witnesses had passed. However, that deadline passed before counsel for Villa Highlands withdrew on March 12.

Villa Highlands points to *Finch v. Wallberg Dredging Co.*, to support the proposition that the Idaho Supreme Court has reversed a district court's denial of a continuance. 76 Idaho 246, 281 P.2d 136 (1955). However, the Court in *Finch* held that the trial court should not have permitted the withdrawal of counsel because the appellants, although diligent, were unable to secure new counsel to try the case given the short time (three days) between the withdrawal and the trial of a complicated case. *Id*. at 251, 281 P.2d at 138. Here, the court tried to work with Villa Highlands by extending certain deadlines, and Villa Highlands has not demonstrated any prejudice that resulted from the court's refusal to vacate the trial. Therefore, we hold that the district court did not err in failing to grant Villa Highlands's motions to vacate the trial or extend certain deadlines.

15

**D. The district court did not err in refusing to allow Villa Highlands to present evidence of consequential damages.**

Villa Highlands asserts that the district court abused its discretion in refusing to allow it to submit its evidence in connection with its consequential damages claim to the jury. Western Community argues that the issue of whether Villa Highlands should have been able to present consequential damages evidence at trial has been rendered moot by the jury's decision and is, therefore, a frivolous issue on appeal.

The jury found no tort or contract liability against Zimney or Western Community for Zimney's actions on the claims presented to it. Because we find that the district court did not err in dismissing Count Six or in holding that Count Four did not state a claim for direct breach of contract, the jury's decision rendered the issue of consequential damages moot. We therefore affirm the district court on this issue.

**E. The district court did not err when it denied, in part, Villa Highlands's Motion to Compel.**

Villa Highlands argues that the district court did not apply the standard set forth in I.R.C.P. 26(b)(1) when it refused to allow Villa Highlands to obtain discovery from Western Community and Farm Bureau about the underwriting process in connection with the builder's risk policy. Western Community contends that the court correctly denied Villa Highlands's Motion to Compel because there were no direct breach of contract claims asserted against Western Community.

"A trial court's decision to grant or deny a motion to compel will not be disturbed by this Court unless there has been a clear abuse of discretion." *Sirius LC v. Erickson*, 144 Idaho 38, 43, 156 P.3d 539, 544 (2007). The standard for abuse of discretion has been laid out above. Idaho Rule of Civil Procedure 26(b)(1) states:

> Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows: (1) Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

The district court here did grant part of Villa Highlands's discovery request regarding the underwriting policy, finding that Villa Highlands was entitled to look at the underwriting file:

> Court: So, the Builder's Risk Policy, the process, a detailed explanation of the underwriting process. I—I think that what—I—I don't think they need to do that, but you may be entitled to simply look at the file…to see if there's any communications there from Zimney to them, as well as any requests. I think that's relevant.
>
> Counsel for Villa Highlands: The entire file?
>
> Court: I think you're entitled to look at it.

However, the court then found that Villa Highlands's other discovery requests would be too burdensome two weeks before the trial commenced. Specifically, the court found that Villa Highlands's request for other underwriting files that Zimney had worked on would be particularly burdensome:

> We're too close to the trial, and that would be a lot of information to obtain. As well as I think that Western and Zimney would probably want to—would want to contact their clients, anyway, to let them know that they may be contacted. It just seems like a lot of work for them to do, when they do need to be preparing for trial. So, I'll deny the motion to compel as to Interrogatory No. 1.

The court also found that the depositions of Clayton Brummett, who handled the adjustment for Western Community, and Rod Saetrum, the attorney who assisted Brummett, were not relevant because both dealt with the adjustment of the claim and the parties had stipulated to the amount of the loss. Therefore, the court found that how the numbers were reached through the adjustment was irrelevant, especially in light of the subsequent use of the appraisal process.

We hold that the district court did not abuse its discretion in denying, in part, Villa Highlands's Motion to Compel. At the stage in the case in which the Motion to Compel was filed, there were no claims directly against Western Community regarding any sort of breach of fiduciary duty, breach of contract, or bad faith. Western Community's adjustment process was not at issue.

## F. Neither party is entitled to attorney fees on appeal.

Villa Highlands requests attorney fees and costs on the basis that it is the prevailing party under I.A.R. 40. It also asserts that it is entitled to costs under I.C. § 10-1210 because its claim involves one for declaratory relief and there is no justification as to why the claim was dismissed. Villa Highlands also requests attorney fees under I.C. § 41-1839(1) or, in the

alternative, I.C. § 12-120(3). Western Community counters that it is entitled to attorney fees and costs pursuant to I.A.R. 40 and 41, along with I.C. §§ 12-120(3) and 121.

Idaho Code § 12-120(3) mandates the award of attorney fees to the prevailing party in a "civil action to recover ... in any commercial transaction." However, I.C. § 41-1839(4) provides that "this section and section 12-123, Idaho Code, shall provide the exclusive remedy for the award of statutory attorney's fees in all actions between insureds and insurers involving disputes arising under policies of insurance." Villa Highlands did not prevail on any issue and is therefore not entitled to an award of attorney fees. Although Western Community has prevailed in this appeal, I.C. § 41-1839(4) precludes an award of attorney fees under either I.C. 12-120(3) or I.C. § 12-121. Therefore, we do not award attorney fees. Western Community is entitled to costs on appeal. I.A.R. 40(a).

## III. CONCLUSION

We hold that the district court did not err in (1) dismissing Count Four of Villa Highlands's Second Amended Complaint; (2) dismissing Villa Highlands's claim for declaratory relief; (3) denying Villa Highlands's Motion for Relief from Judgment; (4) allowing counsel for Villa Highlands to withdraw and then refusing to vacate the trial or extend certain deadlines; (5) refusing to allow Villa Highlands to present evidence in connection with its consequential damages claim; and (6) denying, in part, Villa Highlands's Motion to Compel. Costs to Western Community.

Chief Justice EISMANN and Justices J. Jones, Horton and Kidwell, Pro Tem, **CONCUR.**

18