# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 35470-2008

| | | |
|---|---|---|
| CITY OF HUETTER, an Idaho municipal corporation, | ) ) ) | Moscow, November 2010 Term |
| Plaintiff-Respondent, | ) ) | 2010 Opinion No. 114 |
| v. | ) ) | Filed: November 24, 2010 |
| BRADLEY W. KEENE and JENNIFER L. BROWN, | ) ) ) ) | Stephen W. Kenyon, Clerk |
| Defendants-Appellants. | ) ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, in and for Kootenai County.  The Hon. Lansing L. Haynes, District Judge.

The judgment of the district court is <u>reversed</u>.

James, Vernon & Weeks, P.A., Coeur d'Alene, for appellant Keene.

Wetzel, Wetzel & Holt, PLLC, Coeur d'Alene, for respondent.

_____

EISMANN, Chief Justice.

This is an appeal from a judgment holding that pursuant to Idaho Code § 50-469 the positions of mayor and city councilman became vacant when the voter registrations of the occupants of those positions were cancelled after they had been sworn into office.  We reverse.

## I.  FACTS AND PROCEDURAL HISTORY

On November 6, 2007, Bradley Keene was elected mayor of the City of Huetter and Jennifer Brown was elected to the city council.  Their status as electors was challenged, and on December 27, 2007, the Kootenai County Elections Department sent them written inquiries by certified mail, return receipt requested, notifying them of the challenges.[1]

---

[1] Idaho Code § 34-432(1) provides, "The county clerk shall mail a written inquiry to the challenged elector at his mailing address as indicated on his registration card.  Such inquiry shall state the nature of the challenge and provide a suitable form for reply."  The statute does not require that the inquiry be sent by registered mail.

Mr. Keene did not receive the letter addressed to him. He was not at home when the mail carrier attempted to deliver it, so the carrier left a notice stating that Mr. Keene had a certified letter that could be retrieved at the post office. Due to his work schedule, he was unable to go to the post office when it was open to obtain and sign for the letter. He testified that he did not ask one of his roommates to pick up the letter because Ms. Brown later told him it wasn't pertinent, he did not need to do it right away, and in the worst-case scenario he could just reregister as a voter.

Ms. Brown received and signed for her letter on January 8, 2008, and she telephoned the Elections Department to discuss the matter. She was told that she had twenty days to respond or she would be dropped from the rolls of registered voters. She asked if she could just reregister, and was told that she could, but she was not told that reregistering would satisfy the challenge.

On January 9, 2008, Mr. Keene and Ms. Brown were sworn into office. Their voter registrations were canceled on January 18, 2008, because they had not timely responded to the written inquiries, in person or in writing.

When Mr. Keene and Ms. Brown arrived at a city council meeting on February 13, 2008, two council members refused to permit them to occupy their respective positions because their voter registrations had been cancelled. The next day, Mr. Keene and Ms. Brown attempted to reregister as voters. After a hearing, they were permitted to reregister on February 25, 2008.

On March 19, 2008, the City filed this action seeking a declaratory judgment that Mr. Keene's and Ms. Brown's positions became vacant when their voter registrations were cancelled. The City also sought an injunction preventing them from representing that they are municipal officers. The matter was tried to the district court, and on May 6, 2008, the court entered its decision holding that Idaho Code §§ 50-601 and 50-702, respectively, require mayors and councilmen to remain qualified during their terms; that pursuant to Idaho Code § 50-469, Mr. Keene's and Ms. Brown's positions became vacant when their voter registrations were cancelled; and that the City can fill those positions according to law. The court entered judgment on May 16, 2008, and Mr. Keene and Ms. Brown timely appealed.


## II. ANALYSIS

Both Mr. Keene and Ms. Brown were duly elected to their respective positions. They each took the required oath of office, and they received their certificates of election. The City

has not challenged their elections or their right to take office. Idaho Code § 50-601 requires that a mayor shall "remain[] a qualified elector during his term of office," and Idaho Code § 50-702 requires that a person elected to a city council shall "remain[] a qualified elector under the constitution and laws of the state of Idaho." It is undisputed that during the period from January 18, 2008, until February 25, 2008, Mr. Keene and Ms. Brown were not qualified electors. The district court held that when their voter registrations were cancelled on January 18, 2008, their positions became vacant pursuant to Idaho Code § 50-469. The district court misconstrued the statute.

"The interpretation of a statute is a question of law over which we exercise free review. When construing a statute, the words used must be given their plain, usual, and ordinary meaning, and the statute must be construed as a whole." *Athay v. Stacey*, 142 Idaho 360, 365, 128 P.3d 897, 902 (2005) (citations omitted).

Idaho Code § 50-469 provides, "If a person elected fails to qualify, a vacancy shall be declared to exist, which vacancy shall be filled by the mayor and the council." The district court construed the statute as stating that a vacancy exists if the person elected fails to remain qualified. The court wrote as a conclusion of law, "A vacancy is created when a person elected fails *to remain* a qualified elector during his term of office. I.C. § 50-469." (Emphasis added.) The court misconstrued the statute by adding the word "remain" to it. Unlike Idaho Code §§ 50-601 and 50-702, the word "remain" is not in Idaho Code § 50-469. We cannot add by judicial interpretation words that are not found in the statute as written.

In order to assume the office, the person must be elected and qualify. The word "qualify" means doing whatever is required by law to assume the office to which the person was elected. That usually means taking the oath of office. In some cases, it may also mean doing something else, such as posting a bond.

In *White v. Young*, 88 Idaho 188, 397 P.2d 756 (1964), we stated what it means to "qualify." Crowley was elected as a probate judge on November 3, 1964, and on November 9th he took and filed the oath of office and filed the required bond. He contended that he was at that point entitled to complete the incumbent's term rather than waiting until the second Monday in January, when the incumbent's term would expire. The incumbent had been appointed to fill a vacancy, and a statute stated that he would hold the office until his successor was "elected and qualified." Another statute stated that those elected to county offices, which Crowley was, were

to take their oaths of office on the second Monday of January following their election. We held that Crowley could not qualify for the office of probate judge until the second Monday in January because that was the date on which he was to take the oath of office. We stated, "Pursuant to I.C. § 59-404, the oath for county elective officers, being required to be taken on the second Monday of January succeeding the general election, Mr. Crowley may not qualify for office until the second Monday of January, 1965." 88 Idaho at 196, 397 P.2d at 761. Likewise, in *State v. McDermott*, 52 Idaho 602, 606, 17 P.2d 343, 345 (1932) (emphasis added), we stated, "Under the facts appearing in the record, the probate judge, the committing magistrate, *qualified for the office by taking the oath and furnishing bond . . . .*"

In *Clark v. Wonnacott*, 30 Idaho 98, 162 P. 1074 (1917), Wonnacott was the incumbent county assessor. At the next election, McFarland was elected county assessor, but he died shortly after the election and before his term of office would have commenced. At the time of his death, he had not taken the oath of office and had not given the required bond. *Id*. at 101, 162 P. at 1075. The county commissioners declared the position vacant and appointed Clark to be county assessor commencing on the date that McFarland would have taken office. On that date, Clark demanded possession of the office, but Wonnacott refused to surrender it. This Court held that Clark could not be appointed to the office because there was no vacancy.

"There can be no appointment unless there is a vacancy; there can be no vacancy where there is an incumbent." *Id*. at 104, 162 P. at 1076. There was in effect a statute providing that every person elected for a fixed term "shall hold office until his successor is elected . . . . and qualified." *Id*. at 102, 162 P. at 1075. Thus, Wonnacott was entitled to hold the office until his successor was elected and qualified. "[U]nder our statutes the person elected to an office does not become the incumbent of the office until he qualifies." *Id*. at 106, 162 P. at 1076. We held "that if an officer under the law is entitled to hold his office until his successor is elected and qualified, that the election of the officer does not create a vacancy, but it requires his election *and qualification* coupled with the expiration of his predecessor's term to create a vacancy." *Id*. at 104-05, 162 P. at 1076 (emphasis added).

We held that Wonnacott remained the incumbent because McFarland had not qualified. "Had Mr. McFarland lived and failed to qualify there would have been no vacancy, under our statutes, because there was an incumbent to continue in the office, whose right it was to hold the office until his successor was not only duly elected, but also qualified." *Id*. at 105, 162 P. at

4

1076. We concluded, "And since Mr. McFarland departed this life before he had qualified and before the expiration of his predecessor's term, by no process of reasoning is it possible to consider him an incumbent of the office after his death." *Id.*

We did not state that once McFarland died, he was no longer qualified. Rather, we said that he died "before he had qualified." Qualifying was something he had yet to do. It was taking the oath of office and filing the required bond. The stipulated facts included "that at the time of his death he *had not qualified* as such assessor of Kootenai county, state of Idaho, and *had not made or filed his official oath or given the bond required by law*." *Id.* at 101, 162 P. at 1075.

Both an elected mayor and an elected council member are required to take the oath of office. The mayor "shall take office at the time and in the manner provided for installation of councilmen," Idaho Code § 50-601, and "the newly elected [councilmen] shall . . . subscribe to the oath of office, be presented certificates of election, [and] assume the duties of their position," Idaho Code § 50-702. "A certificate of election for each elected city official . . . shall be . . . presented to such officials at the time of subscribing to the oath of office." Idaho Code § 50-470.

Idaho Code § 50-469 provides, "If a person elected fails to qualify, a vacancy shall be declared to exist, which vacancy shall be filled by the mayor and the council." Keene and Brown did not fail to qualify. The stipulated facts were that they "were sworn into office at a regularly scheduled and noticed meeting of the Huetter City Council." Therefore, there was no vacancy. Section 50-469 declares a vacancy only if "a person elected fails to qualify" in order to assume the office. It does not apply to a person who was elected and qualified, and then later became ineligible to hold the office.

There was a period of about five weeks when Keene and Brown were not eligible to hold office because they were not qualified electors. Idaho Code §§ 50-601 & 50-702. However, there is no statute providing that the failure to remain eligible for the office automatically creates a vacancy. Idaho Code § 59-901 provides:

> Every civil office shall be vacant upon the happening of either of the following events at any time before the expiration of the term of such office, as follows:
>     1. The resignation of the incumbent.
>     2. His death.
>     3. His removal from office.
>     4. The decision of a competent tribunal declaring his office vacant.

5

5. His ceasing to be a resident of the state, district or county in which the duties of his office are to be exercised, or for which he may have been elected.

6. A failure to elect at the proper election, there being no incumbent to continue in office until his successor is elected and qualified, nor other provisions relating thereto.

7. A forfeiture of office as provided by any law of the state.

8. Conviction of any infamous crime, or of any public offense involving the violation of his oath of office.

9. The acceptance of a commission to any military office, either in the militia of this state, or in the service of the United States, which requires the incumbent in the civil office to exercise his military duties out of the state for a period of not less than sixty (60) days.

The judgment recited, "Vacancies are declared to exist in the Mayoral and one Councilperson position of the City of Huetter pursuant to I.C. §59-901(4) . . . ." There is no factual basis for the district court to declare the vacancies in this case.

We have not addressed the issue of city officials failing to remain eligible because of their voter registrations being cancelled for a period of time. However, we have addressed a similar issue with respect to an elected official failing to maintain the required county residence. In *State v. McDermott*, 52 Idaho 602, 17 P.2d 343 (1932), a probate judge was required to reside and keep his office at the county seat and could not be absent from the state for more than twenty days. The judge left the state for five weeks, and after returning presided over a preliminary hearing and issued a commitment requiring the defendant to answer in the district court, where he was convicted of forgery. The defendant challenged his conviction based upon the contention that the probate judge had no authority to conduct the preliminary hearing and issue the commitment because he had forfeited his office by violating the residency statute. We held that although an officer may abandon his office by permanently moving from the county in which he was required to reside, "a mere temporary removal, without intention to make a permanent change of residence, or surrender or abandon the office, or to cease to perform its duties, does not affect the tenure of the office." *Id*. at 609, 17 P.2d at 346.

The same reasoning applies here. The temporary failure of Keene and Brown to remain qualified electors did not constitute an abandonment of their offices. They had reregistered as voters prior to this action being commenced. The record fails to disclose any basis for declaring vacancies in their offices.

6

Keene seeks an award of attorney fees pursuant to Idaho Code § 6-606. That statute authorizes the award of damages in an action for usurpation of office. Keene does not explain how that statute has any application to this case. The City requests an award of attorney fees pursuant to Idaho Code §§ 12-117 and 12-121. Both statutes only provide for the awarding of attorney fees to the prevailing party. Because the City has not prevailed on this appeal, it is not entitled to attorney fees under either statute.

## III. CONCLUSION

We reverse the judgment of the district court. We award appellants costs on appeal, but not attorney fees.

Justices BURDICK, J. JONES, W. JONES and HORTON **CONCUR**.