IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 37573

PAUL J. MONTALBANO, M.D.,

    Plaintiff-Appellant,

v.

SAINT ALPHONSUS REGIONAL
MEDICAL CENTER; SHERRY PARKS;
CHRISTIAN G. ZIMMERMAN, M.D.; and
DONALD FOX, M.D.,

    Defendants-Respondents.

Boise, September 2011

2011 Opinion No. 119

Filed: November 18, 2011

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Deborah Ann Bail, District Judge.

District court interlocutory entry of protective order, affirmed.

Powers, Tolman, PLLC, Boise, for appellant. Raymond D. Powers argued.

Brassey, Wetherell & Crawford, LLP, Boise, for respondents Zimmerman and Fox. Andrew C. Brassey argued.

Givens Pursley, Boise, for respondents SARMC and Parks. Robert B. White argued.

---

BURDICK, Chief Justice

    This case concerns a permissive appeal from the district court's interlocutory entry of a protective order, holding that certain documents related to the suspension of Appellant Paul J. Montalbano's privileges at Saint Alphonsus Regional Medical Center (SARMC) are not discoverable by Montalbano. The interlocutory order comes from Dr. Montalbano's lawsuit

filed against SARMC in district court with ten causes of action including breach of fiduciary duties and defamation; this appeal deals solely with the protective order.

## I. FACTS AND PROCEDURE

Saint Alphonsus Regional Medical Center is a medical center based in Boise. Dr. Paul J. Montalbano (Montalbano) is a neurosurgeon specializing in spine surgery, practicing in Boise. Montalbano had medical staff membership and clinical privileges at SARMC. This case arises from a suspension of Montalbano's staff privileges.

According to Montalbano's pleadings, SARMC created the Spine Medicine Institute in 2006, operating in direct competition with Montalbano. On April 1, 2008, an employee of SARMC, filed a report by means of SARMC's Qstatim reporting system, alleging disruptive behavior by Montalbano in an incident with a patient. The report went to a triage committee for initial evaluation; it was then referred to the Physician Professional Practice Committee (PPPC) for evaluation. The PPPC then recommended that the Medical Executive Committee (MEC) appoint an ad hoc committee to investigate further. In the ensuing investigations, Montalbano alleges, the ad hoc committee learned that the report was not credible and contained falsehoods yet continued to rely upon the report.

In 2008, Dr. Donald Fox, as President of the Medical Staff, allegedly disclosed confidential information about the investigation to Dr. Christian Zimmerman. Zimmerman further disseminated the information, allegedly damaging Montalbano's reputation. Montalbano notified SARMC of this alleged breach of confidentiality. SARMC did not address the substantive concerns raised by Montalbano.

In August 2008, the ad hoc committee concluded that Montalbano violated the conduct policy and recommended a 90-day suspension. The MEC voted to approve this recommendation. Zimmerman was informed of this decision, again in an alleged breach of confidentiality, and again, the information was allegedly disseminated by Zimmerman.

Montalbano sought a hearing and also filed formal reports against Fox and Zimmerman regarding breaches of confidentiality and disparaging remarks. The PPPC issued a precautionary suspension of privileges while the MEC investigated the reports Montalbano had filed. Five days later, the MEC reinstated Montalbano's privileges. The same ad hoc committee that was investigating Montalbano was appointed to investigate Montalbano's complaints regarding Fox and Zimmerman. On January 14, 2009, the ad hoc committee concluded that Montalbano's

reports were not legitimate but retaliatory, and recommended that Montalbano's precautionary suspension be reinstated, which it was.

A hearing on the original report was held before the Fair Hearing Panel on February 16 and 17, 2009. The panel upheld the 90-day suspension recommended by the MEC. It also commented on the reports filed by Montalbano, a comment that Montalbano contends was a policy violation since the investigations should have been kept separate. An appellate review panel affirmed.

On August 4, 2009, Montalbano filed suit alleging civil conspiracy, defamation, violation of civil due process rights, and a variety of other causes of action. After filing suit, Montalbano sought to discover an extensive list of documents "related to the processes, activities, and decisions that ultimately led to the suspension of his privileges." When SARMC asserted a peer review privilege pursuant to I.C. § 39-1392b to not disclose, Montalbano filed a motion to compel. SARMC moved for a protective order.

Before a ruling was made, the parties stipulated to the terms of a protective order, which was approved by the district court on February 5, 2010. Under the terms of the order, the parties could release to each other confidential information, and by marking it as "confidential" receive assurances that the information would not be shared with anyone other than specifically designated persons.

On February 10, 2010, defendants SARMC, Fox, and Parks filed another memorandum in opposition to the motion to compel release of the peer review records. A hearing was held on February 17, 2010.

On February 25, 2010, the court issued a decision, granting in part and denying in part the motion to compel. The district court concluded that the materials related to the peer review process were protected, reasoning that "I.C. § 39-1392b . . . unambiguously protects all peer review records from discovery of any type and bars any testimony about those peer review records. Credentialing and privileging decisions are expressly defined as peer review activities. I.C. § 39-1392a(11)." The district court concluded, "There can be no discovery of the peer review records nor can any witness be questioned about any information provided to the peer review committees nor the interpretation nor analysis of any evidence submitted as part of this process." Other matters of discovery were not protected:

[T]he alleged improper disclosure of confidential information to unrelated parties is not part of a peer review activity and is not privileged conduct under Idaho law. Also, the policies and procedures and Bylaws of St. Alphonsus do not fall within the peer review privilege and may be discovered. The policies which relate to the peer review process, how complaints are handled, how they are referred etc., do not fall within peer review activities and are subject to discovery. The policies themselves are not "the collection, interpretation and analysis of data" and the claim of privilege with respect to those policies is overruled. The plaintiff may engage in discovery on all of the allegations of his complaint unless the inquiry or request for documents directly or indirectly involves a peer review record as defined by the statute.

Montalbano thereafter moved for leave to file a permissive appeal of the court's interlocutory order. On March 24, 2010, the district court granted leave for Montalbano to file a permissive appeal pursuant to Idaho Appellate Rule 12. After carefully reviewing the potential impact on the district court proceedings, we granted the permissive appeal to review the applicability of I.C. § 39-1392b in physician disciplinary proceedings, a question of first impression, to advance trial litigation, and avoid a second appeal.[1] *Verska v. St. Alphonsus Reg'l Med. Ctr.,* No. 37574-2010, 2011 WL 5375192, at *2 (Idaho Nov. 9, 2011).

## II. STANDARD OF REVIEW

"The control of discovery is within the discretion of the trial court." *Jacobson v. State Farm Mut. Auto. Ins. Co.*, 136 Idaho 171, 173, 30 P.3d 949, 951 (2001). "A trial court's decision to grant or deny a motion to compel will not be disturbed by this Court unless there has been a clear abuse of discretion." *Villa Highlands, LLC v. Western Community Ins. Co.*, 148 Idaho 598, 609, 226 P.3d 540, 551 (2010) (quoting *Sirius LC v. Erickson*, 144 Idaho 38, 43, 156 P.3d 539, 544 (2007)). "The sequence of inquiry as to whether the trial court abused its discretion is: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason." *Eagle Water Co., v. Roundy Pole Fence Co.*, 134 Idaho 626, 629, 7 P.3d 1103, 1106 (2000); see also *Sirius LC*, 144 Idaho at 43, 156 P.3d at 544.

"The interpretation of a statute is a question of law over which this Court exercises free review." *Doe v. Boy Scouts of America*, 148 Idaho 427, 430, 224 P.3d 494, 497 (2009). "When

---

[1] "Rule 12 appeals are only accepted in the most exceptional cases" and provide an immediate appeal to resolve substantial legal questions. *Aardema v. U.S. Dairy Sys.,* 147 Idaho 785, 789, 215 P.3d 505, 509 (2009).

4

construing a statute, the words used must be given their plain, usual, and ordinary meaning, and the statute must be construed as a whole." *City of Huetter v. Keene*, 150 Idaho 13, __, 244 P.3d 157, 159 (2010) (quoting *Athay v. Stacey*, 142 Idaho 360, 365, 128 P.3d 897, 902 (2005)). "If the statute is not ambiguous, this Court does not construe it, but simply follows the law as written." *Harrison v. Binnion*, 147 Idaho 645, 649, 214 P.3d 631, 635 (2009) (quoting *McLean v. Maverik Country Stores, Inc.*, 142 Idaho 810, 813, 135 P.3d 756, 759 (2006)).

## III. ANALYSIS

A. **Did the District Court err in holding that Idaho Code § 39-1392b precluded Montalbano from discovering information related to SARMC's peer review of Montalbano?**

The peer review privilege at question in this case is provided for in Idaho Code section 39-1392b which states in relevant part:

> Except as provided in section 39-1392e, Idaho Code, all peer review records shall be confidential and privileged, and shall not be directly or indirectly subject to subpoena or discovery proceedings or be admitted as evidence, nor shall testimony relating thereto be admitted in evidence, or in any action of any kind in any court or before any administrative body, agency or person for any purpose whatsoever. No order of censure, suspension or revocation of licensure, or of a certification in the case of emergency medical services personnel, or health care organization privilege of any physician licensed to practice medicine in Idaho shall be admissible in any civil proceeding seeking damages or other civil relief against the physician, emergency medical services personnel, or health care organization which may be a defendant in said cause.

The district court held that Montalbano could not discover the records from SARMC's peer review proceedings regarding Montalbano's hospital privileges. Idaho Code section 39-1392a(11) defines "peer review" as follows:

> "Peer review" means the collection, interpretation and analysis of data by a health care organization for the purpose of bettering the system of delivery of health care or to improve the provision of health care or to otherwise reduce patient morbidity and mortality and improve the quality of patient care. Peer review activities by a health care organization include, without limitation:
> (a) Credentialing, privileging or affiliating of health care providers as members of, or providers for, a health care organization;
> (b) Quality assurance and improvement, patient safety investigations and analysis, patient adverse outcome reviews, and root-cause analysis and investigation activities by a health care organization; and
> (c) Professional review action, meaning an action or recommendation of a health care organization which is taken or made in the conduct of peer review, that is based on the competence or professional conduct of an individual physician or

emergency medical services personnel where such conduct adversely affects or could adversely affect the health or welfare of a patient or the physician's privileges, employment or membership in the health care organization or in the case of emergency medical services personnel, the emergency medical services personnel's scope of practice, employment or membership in the health care organization.[2]

"Peer review records" are defined in Idaho Code section 39-1392a(12):

"Peer review records" means all evidence of interviews, reports, statements, minutes, memoranda, notes, investigative graphs and compilations and the contents thereof, and all physical materials relating to peer review of any health care organization. "Peer review records" does not mean or include patient care records; provided however, that the records relating to the identification of which particular patient care records were selected for, or reviewed, examined or discussed in peer review by a health care organization and the methodology used for selecting such records shall be considered peer review records.

### 1. "Peer Review" Requirement and the Allegation of Improper Motive

Neither party disputes that the materials sought by Montalbano for discovery were peer review records as defined in the statutory sections listed above. As I.C. § 39-1392b states clearly that "all peer review records shall be confidential and privileged" and provides that the records are not subject to subpoena or discovery in proceedings such as the one in this case, the statute applies to the questions before this Court.

Montalbano argues that SARMC's investigation was motivated by a desire to eliminate him as competition and not for a purpose related to the hospital's quality of care. In essence, Montalbano is asking this Court to recognize a bad faith exception to this privilege to allow disclosure of his peer review records. Unfortunately for Montalbano, no such exception is allowed by the Idaho Legislature. Under I.C. § 39-1392b, the records are privileged once the hospital has shown that the material to be discovered arises from a peer-review proceeding.

If, in fact, the legislature had intended to limit the peer review privilege, it could look to other states that have limited the privilege with language like that used in Va. Code Ann. § 8.01-581.17(B) (West 2011) (allowing for disclosure after hearing for "good cause arising from

---

[2] The terms of this statute are echoed in Idaho Code section 39-1392f, which provides:

Every hospital subject to this act shall cause the hospital's medical staff to organize in-hospital medical staff committees which shall have the responsibility of reviewing the professional practices of members of the hospital's medical staff for the purpose of reducing morbidity and mortality, and for the improvement of the care of patients in the hospital. This review shall include, but not be limited to, the quality and necessity of care provided to patients.

6

extraordinary circumstances") or Mo. Ann. Stat. 537.035.5 (West 2011) (peer review privilege voided for actions arising from the restriction of staff privileges). But no such language or provisions limits the scope of the privilege in I.C. § 39-1392b and this Court will follow section 39-1392b as it is written and give the section its plain and original meaning. *State v. Schwartz*, 139 Idaho 360, 362, 79 P.3d 719, 721 (2003).

### 2. Waiver Argument

Montalbano suggests that Idaho Code section 39-1392e(f) provides that when a physician is the subject of an investigation and brings suit against the health care organization regarding that investigation the confidentiality and privilege are waived simply by the making of such claim. Idaho Code section 39-1392e(f) provides:

> If any physician, emergency medical services personnel, patient, person, organization or entity whose conduct, care, chart, behavior, health or standards of ethics or professional practice is the subject of investigation, comment, testimony, . . . written or verbal utterance . . . or act of any such health care organization or any member or committee thereof in the course of research, study, *disciplinary proceeding or investigation* of the sort contemplated by this act, makes claim or brings suit on account of such health care organization activity, then*, in the defense thereof*, confidentiality and privilege shall be deemed waived by the making of such claim, and such health care organization and the members of their staffs and committees shall be allowed to use and resort to such otherwise protected information for the purpose of presenting proof of the facts surrounding such matter, and *this provision shall apply . . . whether pressed* by a patient, *physician*, emergency medical services personnel, or any other person . . . .

(Emphasis added).

As stated above, this Court must give all the words used in a statute their "plain, usual, and ordinary meaning," construing the statute as a whole. *City of Huetter*, 150 Idaho at __, 244 P.3d at 159. Giving effect to all of the express terms in Idaho Code subsection 39-1392e(f), it applies in defense of a claim brought by a physician and it permits "such health care organization and the members of their staffs and committees" to use the otherwise privileged information "for the purpose of presenting proof of the facts surrounding such matter." The statute cannot be reasonably construed to state that if a physician brings a lawsuit, the privilege is waived in order to permit the physician to use otherwise privileged records. The statute states that the "privilege shall be deemed waived by the making of such claim." "A waiver is the intentional relinquishment of a known right. It is a voluntary act and implies election by a party to dispense

7

with something of value or to forego some right or advantage which he might at his option have demanded and insisted upon." *Crouch v. Bischoff*, 78 Idaho 364, 368, 304 P.2d 646, 649 (1956). When it is a physician who is making the claim, it is the physician who waives his or her right to assert the privilege. The physician cannot waive the right of the hospital or anyone else who is entitled to assert it.

Further, SARMC argues that Montalbano's interpretation of subsection 1392e(f), when applied to the whole subsection, "would provide a sweeping waiver of the confidentiality and privilege of peer review information in nearly every circumstance involving peer review activity at a hospital" because subsection 1392e(f) is not limited to only when a physician brings suit or is the subject of physician conduct. We agree. In order for subsection 1392e(f) to waive the protection of peer review information regarding Montalbano, SARMC must choose to disclose that information as part of its defense before Montalbano is allowed to access and use such information himself.

## B. Can this Court consider the application of Idaho Code section 39-1392c to a health care organization being sued for a credentialing or privileging decision when the district court did not rule on this issue?

The appellant asks this Court to rule on the applicability of Idaho Code section 39-1392c, which grants immunity from civil liability based on peer-review information:

> The furnishing of information or provision of opinions to any health care organization or the receiving and use of such information and opinions shall not subject any health care organization or other person to any liability or action for money damages or other legal or equitable relief. Custodians of such records and persons becoming aware of such data and opinions shall not disclose the same except as authorized by rules adopted by the board of medicine or as otherwise authorized by law. Any health care organization may receive such disclosures, subject to an obligation to preserve the confidential privileged character thereof and subject further to the requirement that such requests shall be made and such use shall be limited to aid the health care organization in conducting peer review.

SARMC had asserted this statute as a defense in the trial court, but the district court did not rule on its applicability. Thus, the applicability of Idaho Code § 39-1392c to the present case cannot be addressed on appeal. "It is well established that in order for an issue to be raised on appeal, the record must reveal an adverse ruling which forms the basis for an assignment of error." *In re Licensed Water Right No. 03-7018 In Name Of Idaho Power Co.*, 151 Idaho 266, __, 255 P.3d 1152, 1165 (2011) (quoting *Krempasky v. Nez Perce Cnty. Planning and Zoning*, 150 Idaho 231, 236, 245 P.3d 983, 988 (2010)).

**C.    Respondent Zimmerman withdrew his request for attorney fees on appeal.**

Although Zimmerman initially argued for attorney fees on appeal pursuant to I.A.R. 40 and Idaho Code section 12-121, this request was withdrawn at oral argument before the Court and will not be addressed.

## IV. CONCLUSION

We affirm the order of the district court entered on February 25, 2010, granting Defendants' motion for a protective order and denying Plaintiffs' motion to compel discovery. Costs on appeal to respondents.

Justices HORTON, TROUT, pro tem, **CONCUR.**

Justice EISMANN sat but did participate in the decision.

J. JONES, Justice, concurring in the result of Part III.A.1, and concurring in the remainder of the Opinion.

I concur in the result reached by the Court in Part III.A.1—that I.C. § 39-1392b applies in this case—but would not necessarily agree that the statute prohibits discovery in all instances where a physician alleges a peer review proceeding is being misused. I concur in the remainder of the Opinion.

The Court correctly concludes that the privilege contained in I.C. § 39-1392b applies to all types of peer review proceedings, including hospital credentialing and disciplinary proceedings. According to I.C. § 39-1392f, peer review includes activities of medical staff to improve "the care of patients in the hospital," as well as the "quality and necessity of care provided to patients." Montalbano's contention that the privilege only applies to medical malpractice claims is untenable.

As with any privilege, the peer review privilege must be strictly construed and applied. As the U.S. Supreme Court stated in *Jaffee v. Redmond*:

> When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule. Exceptions from the general rule disfavoring testimonial privileges may be justified, however, by a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.

9

518 U.S. 1, 9 (1996) (quotation marks and citations omitted). The Court continued, "Our cases make clear that an asserted privilege must also 'serv[e] public ends.'" *Id*. at 11. If the asserted privilege is being misused, such as to serve some interest not within the public policy ends for which it was intended, the privilege should not apply.

The Legislature made the following public policy statement with respect to the peer review privilege:

> To encourage research, discipline and medical study by certain health care organizations for the purposes of reducing morbidity and mortality, enforcing and improving the standards of medical practice in the state of Idaho, certain records of such health care organizations shall be confidential and privileged as set forth in this chapter.

I.C. § 39-1392. The Legislature is not the only branch of Idaho's government that has adopted a public policy favoring the protection of peer review proceedings from public disclosure in order to facilitate the frank exchange of information. This Court has adopted its own privilege designed to protect the confidentiality of the proceedings of in-hospital medical committees. Rule 519 of the Idaho Rules of Evidence prevents the disclosure of confidential communications "made in connection with a proceeding for research, discipline, or medical study . . . for the purpose of reducing morbidity and mortality, or improving the standards of medical practice for health care." I.R.E. 519(a)(4).[3] The proceedings at issue in this case are clearly within the contemplated coverage of both the legislative enactment and the judicial rule.

However, like any privilege, the party invoking the privilege must make an initial showing that the proceeding at hand is within the intended coverage of the privilege. The person

---

[3] The Court has inherent constitutional powers to control court procedures, including the conduct of discovery, and to implement rules regarding the admissibility of evidence, including the power to establish privileges in furtherance of public policy objectives. The Court's peer review privilege, I.R.E. 519, entitled "Hospital, in-hospital medical staff committee and medical society privilege," covers much of the same ground as the legislatively-enacted privilege. Oddly, neither party has cited I.R.E. 519 to the Court. Because I.C. § 39-1392b does not appear to conflict with the Court's rule, application of that statute in this proceeding is not inappropriate.

challenging the privilege must then make a credible showing that the privilege does not apply. That may be done by showing that the person or entity claiming the privilege does not qualify under the terms of the legislative enactment or judicial rule, but it may also be done by making a credible showing that the privilege is being misused. As stated in 81 Am. Jur. 2d Witnesses § 537 (2011):

> Such statutorily created privilege will be narrowly construed by the courts. In construing the peer-review privilege granted to healthcare providers, a court must balance privilege against a plaintiff's right to due process and the judicial need for the fair administration of justice. The view has been followed that the broad privilege granted to a hospital by a state's peer review law extended to any and all matters related to the peer-review process pursuant to which a physician's staff privileges were revoked, subject to the physician's right to conduct discovery for the limited purpose of investigating the committee members' good faith, malice, and reasonable knowledge or believe in order to carry his burden in opposing their qualified immunity.

Public policy dictates that when peer review proceedings are being conducted in good faith, all documents and proceedings should be exempt from disclosure. However, if it can be shown by credible evidence by a physician aggrieved by the proceeding that it is not being conducted in good faith, such as for anti-competitive objectives, the privilege simply does not apply. The privilege is not intended to apply to bad faith proceedings. The Court correctly states that I.C. § 39-1392b does not contain an explicit bad faith exception. Rather, the Legislature specifically stated the public policy behind the privilege in I.C. § 39-1392. According to the Legislature, the privilege is intended for "the purposes of reducing morbidity and mortality, enforcing and improving the standards of medical practice in the State of Idaho." Advancement of anti-competitive practices and other improper agendas do not serve such purposes and the privilege was not intended to apply in such circumstances.

An analogy to the federal act pertaining to peer review, or "professional review actions," is apt. The Health Care Quality Improvement Act of 1986 was enacted for the purpose of "encouraging good faith professional review activities." Pub. L. No. 99-660, 100 Stat. 3743. The Act is codified beginning at 42 U.S.C. § 11101. The Act provides broad immunity from damage claims for persons and entities conducting professional review actions. 42 U.S.C. § 11111(a).

11

However, in order to obtain such immunity, the actions of a professional review body must meet all of the standards specified in 42 U.S.C. § 11112(a). That subsection provides:

> (a) In General—For purposes of the protection set forth in [42 U.S.C. § 11111(a)], a professional review action must be taken—
> (1) in the reasonable belief that the action was in the furtherance of quality health care,
> (2) after a reasonable effort to obtain the facts of the matter,
> (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and
> (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting [specified requirements for notice and hearing].
>
> A professional review action shall be presumed to have met the preceding standards necessary for the protection set out in [42 U.S.C. § 11111(a)] unless the presumption is rebutted by a preponderance of the evidence.

It seems to logically follow that, if a peer review panel's immunity from a damage claim is lost for failure to pursue a peer review action in the furtherance of quality health care, the immunity from disclosure of such panel's proceedings should also be lost for such a failure. Where a proceeding is being conducted, not for the purpose of improving the quality of health care, but, rather, for the purpose of eliminating competition, conducting a vendetta, or some other reason not embodied within the public policy supporting the privilege, it should be lost.

Of interest is the fact that the Hospital's Fair Hearing Plan specifically adopts the provisions of the Health Care Quality Improvement Act. Section 22 of Chapter XII of the Medical Staff Policy & Plans states: "This Fair Hearing Plan will be construed, and at all times will be consistent with, the Health Care Quality Improvement Act and its implementing regulations (HCQIA), and in the event of a conflict, HCQIA will control."

I would hold that Montalbano could overcome the privilege with a credible showing that the Hospital was using the peer review proceedings for an improper purpose, such as he alleges. The problem for Montalbano is that he has not made a credible showing that such is the case. Montalbano alleges that the peer review proceedings were merely a ruse to stifle competition by eliminating him as a competitor against the Hospital's in-house spinal surgery group.

12

Montalbano has failed to present any credible evidence to support that contention. Nor has it been shown that the Hospital did not substantially comply with the standards adopted by the Hospital for its Fair Hearing Plan, specifically the HCQIA requirements.

On the other hand, the record shows that the proceedings were instituted for valid reasons. It discloses that Montalbano had previously had repeated behavioral issues in the hospital setting. Disruptive behavior by a physician can have an adverse impact on hospital patient care and can give rise to limitation or removal of a physician's hospital privileges. *See Miller v. St. Alphonsus Medical Center*, 139 Idaho 825, 87 P.3d 934 (2004). The Fair Hearing Panel recited numerous alleged conduct violations on the part of Montalbano dating back to 2001, a number of which were found to constitute policy violations, some of which resulted in corrective action. The complaint that gave rise to the present proceeding resulted in a finding by the panel that Montalbano had engaged in disruptive behavior with regard to a patient who desired to "fire" him. The panel noted that during the pendency of the proceedings on that matter, Montalbano had filed complaints against three other physicians, which were found to have been in retaliation and to be conduct negatively affecting the operation of the hospital. It seems apparent that the Hospital had good reason to take action regarding the allegations of disruptive behavior and that the proceedings were not merely a pretext for stifling competition.

Montalbano also alleges that information was improperly disclosed by at least one peer review panel member involved in the proceedings. It is not clear whether Montalbano asserted to the district court that the privilege had been waived by virtue of that fact.[4] Certainly a party asserting a privilege can waive it by voluntary disclosure, as we have provided in I.R.E. 510:

> A person upon whom these rules confer a privilege against disclosure of the confidential matter or communication waives the privilege if the person or the person's predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication. This rule does not apply if the disclosure is itself a privileged communication.

---

[4] Montalbano does claim on appeal that the privilege was waived, but his argument is premised upon I.C. § 39-1392b(f). The Court correctly disposes of that contention in Part III.A.2 of the Opinion.

13

Although I.R.E. 510 deals specifically with waiver of privileges provided for in the Idaho Rules of Evidence, there is no reason why we should not apply it equally to legislatively-created privileges. However, Montalbano has failed to raise this particular waiver issue on appeal. Presumably, he can do so on remand.

Because Montalbano has failed to make a sufficient showing that the privilege should not apply in this case, the district court correctly ruled with regard to the Montalbano's request to conduct discovery and this Court reached the correct conclusion in affirming that holding.