BURDICK, Chief Justice.
This case concerns a permissive appeal from the district court’s interlocutory entry of a protective order, holding that certain documents related to the suspension of Appellant Paul J. Montalbano’s privileges at Saint Alphonsus Regional Medical Center (SARMC) are not discoverable by Montalba *839 no. The interlocutory order comes from Dr. Montalbano’s lawsuit filed against SARMC in district court with ten causes of action including breach of fiduciary duties and defamation; this appeal deals solely with the protective order.
I. FACTS AND PROCEDURE
Saint Alphonsus Regional Medical Center is a medical center based in Boise. Dr. Paul J. Montalbano (Montalbano) is a neurosurgeon specializing in spine surgery, practicing in Boise. Montalbano had medical staff membership and clinical privileges at SARMC. This case arises from a suspension of Montalbano’s staff privileges.
According to Montalbano’s pleadings, SARMC created the Spine Medicine Institute in 2006, operating in direct competition with Montalbano. On April 1, 2008, an employee of SARMC, filed a report by means of SARMC’s Qstatim reporting system, alleging disruptive behavior by Montalbano in an incident with a patient. The report went to a triage committee for initial evaluation; it was then referred to the Physician Professional Practice Committee (PPPC) for evaluation. The PPPC then recommended that the Medical Executive Committee (MEC) appoint an ad hoe committee to investigate further. In the ensuing investigations, Montalbano alleges, the ad hoc committee learned that the report was not credible and contained falsehoods yet continued to rely upon the report.
In 2008, Dr. Donald Fox, as President of the Medical Staff, allegedly disclosed confidential information about the investigation to Dr. Christian Zimmerman. Zimmerman further disseminated the information, allegedly damaging Montalbano’s reputation. Montalbano notified SARMC of this alleged breach of confidentiality. SARMC did not address the substantive concerns raised by Montalbano.
In August 2008, the ad hoc committee concluded that Montalbano violated the conduct policy and recommended a 90-day suspension. The MEC voted to approve this recommendation. Zimmerman was informed of this decision, again in an alleged breach of confidentiality, and again, the information was allegedly disseminated by Zimmerman.
Montalbano sought a hearing and also filed formal reports against Fox and Zimmerman regarding breaches of confidentiality and disparaging remarks. The PPPC issued a precautionary suspension of privileges while the MEC investigated the reports Montalbano had filed. Five days later, the MEC reinstated Montalbano’s privileges. The same ad hoc committee that was investigating Montalbano was appointed to investigate Montalbano’s complaints regarding Fox and Zimmerman. On January 14, 2009, the ad hoc committee concluded that Montalbano’s reports were not legitimate but retaliatory, and recommended that Montalbano’s precautionary suspension be reinstated, which it was.
A hearing on the original report was held before the Fair Hearing Panel on February 16 and 17, 2009. The panel upheld the 90-day suspension recommended by the MEC. It also commented on the reports filed by Montalbano, a comment that Montalbano contends was a policy violation since the investigations should have been kept separate. An appellate review panel affirmed.
On August 4, 2009, Montalbano filed suit alleging civil conspiracy, defamation, violation of civil due process rights, and a variety of other causes of action. After filing suit, Montalbano sought to discover an extensive list of documents “related to the processes, activities, and decisions that ultimately led to the suspension of his privileges.” When SARMC asserted a peer review privilege pursuant to I.C. § 39-1392b to not disclose, Montalbano filed a motion to compel. SARMC moved for a protective order.
Before a ruling was made, the parties stipulated to the terms of a protective order, which was approved by the district court on February 5, 2010. Under the terns of the order, the parties could release to each other confidential information, and by marking it as “confidential” receive assurances that the information would not be shared with anyone other than specifically designated persons.
On February 10, 2010, defendants SARMC, Fox, and Parks filed another mem *840 orandum in opposition to the motion to compel release of the peer review records. A hearing was held on February 17, 2010.
On February 25, 2010, the court issued a decision, granting in part and denying in part the motion to compel. The district court concluded that the materials related to the peer review process were protected, reasoning that “I.C. § 39-1392b ... unambiguously protects all peer review records from discovery of any type and bars any testimony about those peer review records. Credentialing and privileging decisions are expressly defined as peer review activities. I.C. § 39-1392a(ll).” The district court concluded, “There can be no discovery of the peer review records nor can any witness be questioned about any information provided to the peer review committees nor the interpretation nor analysis of any evidence submitted as part of this process.” Other matters of discovery were not protected:
[T]he alleged improper disclosure of confidential information to unrelated parties is not part of a peer review activity and is not privileged conduct under Idaho law. Also, the policies and procedures and Bylaws of St. Alphonsus do not fall within the peer review privilege and may be discovered. The policies which relate to the peer review process, how complaints are handled, how they are referred etc., do not fall within peer review activities and are subject to discovery. The policies themselves are not “the collection, interpretation and analysis of data” and the claim of privilege with respect to those policies is overruled. The plaintiff may engage in discovery on all of the allegations of his complaint unless the inquiry or request for documents directly or indirectly involves a peer review record as defined by the statute.
Montalbano thereafter moved for leave to file a permissive appeal of the court’s interlocutory order. On March 24, 2010, the district court granted leave for Montalbano to file a pemissive appeal pursuant to Idaho Appellate Rule 12. After carefully reviewing the potential impact on the district court proceedings, we granted the permissive appeal to review the applicability of I.C. § 39-1392b in physician disciplinary proceedings, a question of first impression, to advance trial litigation, and avoid a second appeal.[1] Verska v. St. Alphonsus Reg’l Med. Ctr., 151 Idaho 889, 892, 265 P.3d 502, 505 (2011).
II. STANDARD OF REVIEW
“The control of discovery is within the discretion of the trial court.” Jacobson v. State Farm Mut. Auto. Ins. Co., 136 Idaho 171, 173, 30 P.3d 949, 951 (2001). “A trial court’s decision to grant or deny a motion to compel will not be disturbed by this Court unless there has been a clear abuse of discretion.” Villa Highlands, LLC v. Western Community Ins. Co., 148 Idaho 598, 609, 226 P.3d 540, 551 (2010) (quoting Sirius LC v. Erickson, 144 Idaho 38, 43, 156 P.3d 539, 544 (2007)). “The sequence of inquiry as to whether the trial court abused its discretion is: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason.” Eagle Water Co. v. Roundy Pole Fence Co., 134 Idaho 626, 629, 7 P.3d 1103, 1106 (2000); see also Sirius LC, 144 Idaho at 43, 156 P.3d at 544.
“The interpretation of a statute is a question of law over which this Court exercises free review.” Doe v. Boy Scouts of America, 148 Idaho 427, 430, 224 P.3d 494, 497 (2009). “When construing a statute, the words used must be given their plain, usual, and ordinary meaning, and the statute must be construed as a whole.” City of Huetter v. Keene, 150 Idaho 13, 15, 244 P.3d 157, 159 (2010) (quoting Athay v. Stacey, 142 Idaho 360, 365, 128 P.3d 897, 902 (2005)). “If the statute is not ambiguous, this Court does not construe it, but simply follows the law as written.” Harrison v. Binnion, 147 Idaho 645, 649, 214 P.3d 631, 635 (2009) (quoting *841 McLean v. Maverik Country Stores, Inc., 142 Idaho 810, 813, 135 P.3d 756, 759 (2006)).
III. ANALYSIS
A. Did the District Court err in holding that Idaho Code § 39-1392b precluded Montalbano from discovering information related to SARMC’s peer review of Montalbano?
The peer review privilege at question in this ease is provided for in Idaho Code section 39-1392b which states in relevant part:
Except as provided in section 39-1392e, Idaho Code, all peer review records shall be confidential and privileged, and shall not be directly or indirectly subject to subpoena or discovery proceedings or be admitted as evidence, nor shall testimony relating thereto be admitted in evidence, or in any action of any kind in any court or before any administrative body, agency or person for any purpose whatsoever. No order of censure, suspension or revocation of licensure, or of a certification in the case of emergency medical services personnel, or health care organization privilege of any physician licensed to practice medicine in Idaho shall be admissible in any civil proceeding seeking damages or other civil relief against the physician, emergency medical services personnel, or health care organization which may be a defendant in said cause.
The district court held that Montalbano could not discover the records from SARMC’s peer review proceedings regarding Montalbano’s hospital privileges. Idaho Code section 39-1392a(ll) defines “peer review” as follows:
“Peer review” means the collection, interpretation and analysis of data by a health care organization for the purpose of bettering the system of delivery of health care or to improve the provision of health care or to otherwise reduce patient morbidity and mortality and improve the quality of patient care. Peer review activities by a health care organization include, without limitation:
(a) Credentialing, privileging or affiliating of health care providers as members of, or providers for, a health care organization;
(b) Quality assurance and improvement, patient safety investigations and analysis, patient adverse outcome reviews, and root-cause analysis and investigation activities by a health care organization; and
(e) Professional review action, meaning an action or recommendation of a health care organization which is taken or made in the conduct of peer review, that is based on the competence or professional conduct of an individual physician or emergency medical services personnel where such conduct adversely affects or could adversely affect the health or welfare of a patient or the physician’s privileges, employment or membership in the health care organization or in the case of emergency medical services personnel, the emergency medical services personnel’s scope of practice, employment or membership in the health care organization.[2]
“Peer review records” are defined in Idaho Code section 39-1392a(12):
“Peer review records” means all evidence of interviews, reports, statements, minutes, memoranda, notes, investigative graphs and compilations and the contents thereof, and all physical materials relating to peer review of any health care organization. “Peer review records” does not mean or include patient care records; provided however, that the records relating to the identification of which particular patient care records were selected for, or reviewed, examined or discussed in peer review by a health care organization and the methodology used for selecting such records shall be considered peer review records.
*842 1. “Peer Review” Requirement and the Allegation of Improper Motive
Neither party disputes that the materials sought by Montalbano for discovery were peer review records as defined in the statutory sections listed above. As I.C. § 39-1392b states clearly that “all peer review records shall be confidential and privileged” and provides that the records are not subject to subpoena or discovery in proceedings such as the one in this case, the statute applies to the questions before this Court.
Montalbano argues that SARMC’s investigation was motivated by a desire to eliminate him as competition and not for a purpose related to the hospital’s quality of care. In essence, Montalbano is asking this Court to recognize a bad faith exception to this privilege to allow disclosure of his peer review records. Unfortunately for Montalbano, no such exception is allowed by the Idaho Legislature. Under I.C. § 39-1392b, the records are privileged once the hospital has shown that the material to be discovered arises from a peer-review proceeding.
If, in fact, the legislature had intended to limit the peer review privilege, it could look to other states that have limited the privilege with language like that used in Va.Code Ann. § 8.01-581.17(B) (West 2011) (allowing for disclosure after hearing for “good cause arising from extraordinary circumstances”) or Mo. Ann. Stat. 537.035.5 (West 2011) (peer review privilege voided for actions arising from the restriction of staff privileges). But no such language or provisions limits the scope of the privilege in I.C. § 39-1392b and this Court will follow section 39-1392b as it is written and give the section its plain and original meaning. State v. Schwartz, 139 Idaho 360, 362, 79 P.3d 719, 721 (2003).
2. Waiver Argument
Montalbano suggests that Idaho Code section 39-1392e(f) provides that when a physician is the subject of an investigation and brings suit against the health care organization regarding that investigation the confidentiality and privilege are waived simply by the making of such claim. Idaho Code section 39-1392e(f) provides:
If any physician, emergency medical services personnel, patient, person, organization or entity whose conduct, care, chart, behavior, health or standards of ethics or professional practice is the subject of investigation, comment, testimony, ... written or verbal utterance ... or act of any such health care organization or any member or committee thereof in the course of research, study, disciplinary proceeding or investigation of the sort contemplated by this act, makes claim or brings suit on account of such health care organization activity, then, in the defense thereof, confidentiality and privilege shall be deemed waived by the making of such claim, and such health care organization and the members of their staffs and committees shall be allowed to use and resort to such otherwise protected information for the purpose of presenting proof of the facts surrounding such matter, and this provision shall apply ... whether pressed by a patient, physician, emergency medical services personnel, or any other person....
(Emphasis added).
As stated above, this Court must give all the words used in a statute their “plain, usual, and ordinary meaning,” construing the statute as a whole. City of Huetter, 150 Idaho at 15, 244 P.3d at 159. Giving effect to all of the express terms in Idaho Code subsection 39 — 1392e(f), it applies in defense of a claim brought by a physician and it permits “such health care organization and the members of their staffs and committees” to use the otherwise privileged information “for the purpose of presenting proof of the facts surrounding such matter.” The statute cannot be reasonably construed to state that if a physician brings a lawsuit, the privilege is waived in order to permit the physician to use otherwise privileged records. The statute states that the “privilege shall be deemed waived by the making of such claim.” “A waiver is the intentional relinquishment of a known right. It is a voluntary act and implies election by a party to dispense with something of value or to forego some right or advantage which he might at his option have demanded and insisted upon.” Crouch v. Bischoff, 78 Idaho 364, 368, 304 P.2d 646, 649 (1956). When it is a physician who is making *843 the claim, it is the physician who waives his or her right to assert the privilege. The physician cannot waive the right of the hospital or anyone else who is entitled to assert it.
Further, SARMC argues that Montalbano’s interpretation of subsection 1392e(f), when applied to the whole subsection, “would provide a sweeping waiver of the confidentiality and privilege of peer review information in nearly every circumstance involving peer review activity at a hospital” because subsection 1392e(f) is not limited to only when a physician brings suit or is the subject of physician conduct. We agree. In order for subsection 1392e(f) to waive the protection of peer review information regarding Montalbano, SARMC must choose to disclose that information as part of its defense before Montalbano is allowed to access and use such information himself.
B. Can this Court consider the application of Idaho Code section 39-1392c to a health care organization being sued for a credentialing or privileging decision when the district court did not rule on this issue?
The appellant asks this Court to rule on the applicability of Idaho Code section 39-1392c, which grants immunity from civil liability based on peer-review information:
The furnishing of information or provision of opinions to any health care organization or the receiving and use of such information and opinions shall not subject any health care organization or other person to any liability or action for money damages or other legal or equitable relief. Custodians of such records and persons becoming aware of such data and opinions shall not disclose the same except as authorized by rules adopted by the board of medicine or as otherwise authorized by law. Any health care organization may receive such disclosures, subject to an obligation to preserve the confidential privileged character thereof and subject further to the requirement that such requests shall be made and such use shall be limited to aid the health care organization in conducting peer review.
SARMC had asserted this statute as a defense in the trial court, but the district court did not rule on its applicability. Thus, the applicability of Idaho Code § 39-1392c to the present case cannot be addressed on appeal. “It is well established that in order for an issue to be raised on appeal, the record must reveal an adverse ruling which forms the basis for an assignment of error.” In re Licensed Water Right No. 03-7018 In Name Of Idaho Power Co., 151 Idaho 266, 279, 255 P.3d 1152, 1165 (2011) (quoting Krempasky v. Nez Perce Cnty. Planning and Zoning, 150 Idaho 231, 236, 245 P.3d 983, 988 (2010)).
C. Respondent Zimmerman withdrew his request for attorney fees on appeal.
Although Zimmerman initially argued for attorney fees on appeal pursuant to I.A.R. 40 and Idaho Code section 12-121, this request was withdrawn at oral argument before the Court and will not be addressed.
IV. CONCLUSION
We affirm the order of the district court entered on February 25, 2010, granting Defendants’ motion for a protective order and denying Plaintiffs’ motion to compel discovery. Costs on appeal to respondents.
Justices HORTON, TROUT, pro tern concur.
Justice EISMANN sat but did participate in the decision.

. “Rule 12 appeals are only accepted in the most exceptional cases" and provide an immediate appeal to resolve substantial legal questions. Aardema v. U.S. Daily Sys., 147 Idaho 785, 789, 215 P.3d 505, 509 (2009).

. The terms of this statute are echoed in Idaho Code section 39-1392f, which provides:
Every hospital subject to this act shall cause the hospital's medical staff to organize in-hospital medical staff committees which shall have the responsibility of reviewing the professional practices of members of the hospital's medical staff for the purpose of reducing morbidity and mortality, and for the improvement of the care of patients in the hospital. This review shall include, but not be limited to, the quality and necessity of care provided to patients.